# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ASHLEY M. BARNES, *Plaintiff,* vs. ST. FRANCIS COMMUNITY SERVICES and CHRIS DOLPH, *Defendants.* | Case No. 16-1281-EFM-GLR |

## MEMORANDUM AND ORDER

Plaintiff Ashley Barnes asserts seven claims against Defendants St. Francis Community Services ("St. Francis") and Chris Dolph. Barnes' children were removed from her home, and she sought to reintegrate them into her home. St. Francis, a corporation that contracts with the state of Kansas, provides foster care, adoption, and family preservation/reintegration programs. Dolph, a former employee of St. Francis, was Barnes' caseworker. Dolph allegedly sexually harassed Barnes and threatened the removal of her kids from her permanent custody if she did not comply with his requests.

Barnes brings seven claims, including three federal claims brought under 42 U.S.C. § 1983 and four state law claims. St. Francis now seeks dismissal of the federal claims because it asserts that it was not acting under color of state law and that Barnes fails to allege sufficient facts to state a cause of action against St. Francis. St. Francis also contends that two of the state

law claims fail to adequately allege a claim against it. Because the Court finds that Barnes adequately alleges sufficient facts to support some of her claims, but not all of them, the Court denies in part and grants in part St. Francis' Motion to Dismiss (Doc. 11).

## I. Factual and Procedural Background[1]

Barnes resides in Sedgwick County, Kansas. In 2014, Barnes children were removed from her home. Barnes wanted her children back and began a series of steps to have them reintegrated into her home. The state court ordered her to work with St. Francis, a Kansas corporation, in the reintegration process. Since July 1, 2013, St. Francis has contracted with the state of Kansas to operate its foster care, adoption, and family preservation programs for Wichita and western Kansas. The state of Kansas describes its relationship with St. Francis in the following way:

> Kansas contracts with private agencies that are responsible for providing foster care and reintegration services including case planning, placement, life skills and foster parent recruitment and training. . . . DCF social workers are responsible to monitor the safety and well-being of the children who are in foster homes and the progress the children are making toward being able to return to their family home or find another permanent home.

Before the privatization of these services, these duties were performed by the state.

One of Barnes' assigned case workers from St. Francis was Dolph. He is now a former employee of St. Francis, but throughout the time of the allegations in the Complaint, he was acting within the course and scope of his employment with St. Francis. The state court and Dolph told Barnes that Dolph would have a role in having her children returned. Barnes was instructed to follow the court's instructions and communicate frequently with Dolph, and that she

---

[1] The facts are taken from the Complaint and are stated in the light most favorable to Plaintiff, the non-moving party.

must allow Dolph to come to her home. Dolph could write reports regarding Barnes upon which the court relied, and Dolph could order Barnes to do tasks or take drug tests.

Dolph would show up at Barnes' home unannounced and alone. He ordered Barnes to do things for his personal sexual gratification by threatening her with the power he had over her. When they were alone, he touched her inappropriately by grabbing her ribs and waist. He also sat close to her on the couch and stroked her hair.

Dolph contacted Barnes by text message on the same phone that he used to work at St. Francis. He suggested that they shower together. He also sent her at least two nude photos of himself and other texts that were sexual in nature. Dolph told Barnes to "give me some or I will take the kids," which frightened Barnes.

In addition, Dolph told Barnes to send sexually charged texts and pictures to him. He told her that if she told anyone, he would show them her texts and she would look "sick and crazy." Barnes felt "nasty and disgusting," but she did as Dolph instructed because she was afraid of losing her kids. Finally, Dolph told Barnes that if she told anybody about his behavior, "things would happen," and he would be sure her kids were taken away permanently.

St. Francis received several complaints about Dolph, including that he was unfair, that he favored attractive female clients, that he was not a good social worker, and that he did not follow rules. When Dolph met with Barnes in front of other St. Francis employees, he would sit close to her, touch her arms, and rub her back. The other employees did not stop this behavior.

St. Francis knew or should have known that Dolph had been disciplined and/or terminated from his previous social work job for sexual misconduct issues. St. Francis did not monitor Dolph's communications with Barnes. In addition, St. Francis' high levels of turnover

and chronic short staffing led to inadequate supervision and one-on-one visits that were not monitored.

Barnes filed her Complaint on July 8, 2016, and asserts seven claims. Her first three claims are brought under 42 U.S.C. § 1983 against both St. Francis and Dolph. She alleges that Defendants acted under color of state law and that they violated her right (1) to equal protection, (2) to be free from unreasonable search and seizure, and (3) to substantive due process. She also brings two state law claims against both St. Francis and Dolph for the tort of outrage and invasion of privacy. Finally, she brings two state law claims against only St. Francis for negligence and negligent infliction of emotional distress.

St. Francis has filed a Motion to Dismiss.[2] It seeks dismissal of the federal claims on the basis that (1) it was not acting under color of state law, (2) the facts do not state a cause of action, and (3) it is entitled to qualified immunity. St. Francis argues that if the federal claims are dismissed, the Court should dismiss the remaining state law claims because the Court will not have jurisdiction. Alternatively, even if the Court does not dismiss the federal claims, St. Francis argues that the outrage and invasion of privacy claims must be dismissed because the facts, as alleged, do not support a vicarious liability claim against it.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state

---

[2] Defendant Dolph was served on September 10, 2016, but he has not filed an Answer or any responsive pleading.

[3] Fed. R. Civ. P. 12(b)(6).

a claim to relief that is plausible on its face.' "[4] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests.[6] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[9]

### III. Analysis

**A. Federal Claims**

Barnes brings three claims under 42 U.S.C. § 1983. The first is an equal protection claim, the second is an unreasonable search and seizure claim, and the third is a substantive due process claim. St. Francis seeks the dismissal of these federal claims for several reasons. First, St. Francis contends that it is a private entity and was not acting under color of state law. Next,

---

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

[5] *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (internal citations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief.").

[7] *Iqbal*, 556 U.S. at 678-79.

[8] *See id.* at 678. ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

[9] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

St. Francis argues that Barnes alleges insufficient facts to state a claim against it. Finally, St. Francis briefly asserts that it is entitled to qualified immunity.

*1. Whether Barnes Alleged that St. Francis Acted under Color of State Law*

St. Francis first argues that it is a private entity and that the allegations are insufficient to establish that it was acting under color of state law. All of the § 1983 claims require an allegation of a "violation of a right secured by the Constitution and laws of the United States" and "that the alleged deprivation was committed by a person acting under color of state law."[10] In determining whether a private actor is acting under the color of state law, the Tenth Circuit has articulated four tests.[11] These include the public function, nexus, symbiotic relationship, and joint action tests.[12] A plaintiff does not have to meet all four tests but rather only one. Under any one of these tests, however, "the conduct allegedly causing the deprivation of a federal right must be fairly attributable to the State."[13]

The public function test considers whether the private party is performing "a function traditionally exclusively reserved to the States."[14] It is an "arduous standard" to meet.[15] Very few functions have been reserved to the state exclusively.[16]

The nexus test is met when a plaintiff can establish that "there is a sufficiently close nexus between the government and the challenged conduct such that the conduct may be fairly

---

[10] *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (quotation marks and citation omitted).

[11] *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002).

[12] *Id*.

[13] *Id.* at 1203 (internal quotation marks and citation omitted).

[14] *Id.* (citation omitted).

[15] *Id.*

[16] *Id.*

treated as that of the State itself."[17] Generally, only when the state has exercised coercive power, or given significant encouragement to the private party, will the state be held accountable for the private party's conduct under this test.[18]

With respect to the symbiotic relationship test, the question is whether the state "has so insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity."[19] This test has also been read narrowly.[20]

Under the joint action test, the Court must consider "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."[21] The inquiry is not concerned with a "long-term interdependence between the state and a private entity" but rather considers the individual action.[22] "[M]ere acquiescence of a state official in the actions of a private party is not sufficient."[23]

St. Francis argues that under any one of the four applicable tests, it was not acting under color of state law. Barnes disagrees and argues that with the exception of the nexus test, each test can be met. Barnes' primary argument is that the public function test has been alleged because St. Francis was a participant in the decision of whether Barnes' children should be returned to her home or whether Barnes' parental rights should be permanently severed.

---

[17] *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1448 (10th Cir. 1995) (quotation marks and citation omitted).

[18] *Id.*

[19] *Id.* at 1451 (internal quotation marks and citations omitted).

[20] *Id.*

[21] *Johnson*, 293 F.3d at 1205 (citation omitted).

[22] *Gallagher*, 49 F.3d at 1453.

[23] *Id.*

However, Barnes also asserts that the symbiotic relationship test is met because St. Francis is so entwined with the state that St. Francis' actions should be considered state actions. Finally, Barnes states that the joint action test is met because St. Francis and the state were jointly acting to determine whether Barnes' children should be returned to Barnes.

At this point, the Court must look at the allegations in the Complaint to see whether Barnes has sufficiently alleged that St. Francis was acting under color of state law.[24] Although Barnes' allegations are somewhat sparse, she has a few allegations that broadly state that St. Francis was performing a function traditionally performed by the state. Specifically, she alleges that St. Francis and Dolph were involved in the decision-making process of whether Barnes' children may be permanently removed from her home.[25] She states that the court ordered her to work with St. Francis in the reintegration process and that the court told her that St. Francis and Dolph would play a role in having her children returned. Barnes alleges that Dolph told her that if she did not comply with Dolph's requests that he would make sure her kids were taken away "for good" and that Dolph told her to "give me some or I will take the kids."

Defendant argues that the public function test cannot be met because courts have generally found that the care of foster children and adoption services do not fall within the power of the state. Although that contention is correct, the distinction here is that Barnes is not

---

[24] Plaintiff's response raised numerous allegations or "facts" that were not included in her Complaint. For instance, Plaintiff relies on a handbook from the Kansas Department for Children and Families ("DCF") to explain the relationship between DCF and St. Francis. In addition, Plaintiff cites to (and attaches) the contract between St. Francis and DCF to bolster several other arguments. These facts were not presented in her Complaint, and the Court cannot add facts that are not there. In addition, Plaintiff did not file a motion seeking leaving to amend her complaint.

[25] There are no allegations that St. Francis and Dolph were involved in the initial decision removing Plaintiff's children from the home, but there are allegations that Dolph and St. Francis would be involved in making the determination of whether the children would be permanently removed from her custody. At this point, the Court must consider the factual allegations in the Complaint as true and in the light most favorable to Plaintiff.

discussing foster and adoption services by St. Francis but rather her custody rights to her children. She alleges that St. Francis and Dolph would participate in the decision of whether her children would be permanently removed from her home. Indeed, she alleges that Dolph threatened the permanent removal of her children if she did not comply with his requests. The removal of a child from the custody of a biological parent is a function traditionally reserved to the state.[26] Thus, the Court finds that Barnes has plausibly alleged that St. Francis was performing a public function and may be considered a state actor for purposes of her § 1983 claims.

   2. *Whether Sufficient Facts were Alleged against St. Francis*

St. Francis also argues that the § 1983 claims should be dismissed because Barnes alleges insufficient facts. In general, St. Francis asserts that Barnes does not adequately allege supervisor or employer liability with regard to all three claims brought under § 1983 because she does not allege "personal direction" or "actual knowledge and acquiescence" on behalf of St. Francis. In addition, St. Francis argues that Barnes fails to state sufficient facts regarding Dolph's behavior as to her search and seizure and substantive due process claims.

   a. St. Francis' Liability

St. Francis contends that Barnes only asserts conclusory phrases of "deliberate indifference" and "gross neglect" against it and fails to include any specific allegations relating to St. Francis' role in the constitutional violations. St. Francis directs this Court's attention to *Woodward v. City of Worland*,[27] a Tenth Circuit case. In *Woodward*, the Tenth Circuit stated that to establish supervisor liability under § 1983, there must be "allegations of personal

---

[26] *See, e.g.*, K.S.A. § 38-2201 et seq.

[27] 977 F.2d 1392 (10th Cir. 1992).

direction or of actual knowledge and acquiescence."[28] St. Francis contends that the allegations in this case are the same type of allegations that the Tenth Circuit found conclusory in that case. In that case, however, the Tenth Circuit considered the allegations as they related to the plaintiffs' *evidence* because the case had proceeded to summary judgment.[29] Indeed, the Tenth Circuit recited some of the defendants' evidence that was contrary to the plaintiffs' allegations.[30]

Here, Barnes does not allege personal direction but she does adequately allege knowledge and acquiescence. She alleges that St. Francis was deliberately indifferent to Barnes by understaffing and failing to supervise its caseworkers, including Dolph. She also alleges that St. Francis was deliberately indifferent in hiring Dolph because it knew that Dolph had previous performance and/or sexual misconduct issues and hired him anyway. More specifically, Barnes alleges that St. Francis received complaints about Dolph but still failed to monitor or supervise him. An employing entity may be held liable under § 1983 if supervisory employees "knew of the sexual harassment and failed to take action to end it."[31] In addition, "[t]he failure to investigate could be considered acquiescence to the harassment."[32] Thus, although Barnes does not specifically identify the supervisory employee and her allegations are somewhat cursory, she

---

[28] *Id.* at 1400 (quotation marks and citation omitted); *see also Lankford v. City of Hobart*, 73 F.3d 283, 287 (10th Cir. 1996) (stating that a municipality may be found liable if there is actual knowledge and acquiescence of an employee's misbehavior). In this case, St. Francis is the entity.

[29] *Woodward*, 977 F.2d at 1398-99.

[30] *Id.*

[31] *Farris v. Bd. of Cty. Commr's of Wyandotte Cty., Kan*, 924 F. Supp 1041, 1049 (D. Kan. 1996)

[32] *Id.*

adequately alleges that St. Francis had knowledge and acquiesced in the discriminatory treatment toward her.[33]

   b. Equal Protection Claim

St. Francis concedes that Barnes may have alleged an equal protection claim against Dolph but argues that she does not allege sufficient facts as to St. Francis' role. As noted above, however, the Court finds that although Barnes' allegations are somewhat cursory, she has adequately alleged knowledge and acquiescence on behalf of St. Francis. Thus, the Court denies St. Francis' motion with regard to this claim.

   c. Search and Seizure Claim

As to Barnes' unreasonable search and seizure claim, St. Francis contends that Barnes does not allege an actionable claim because she does not allege a search or seizure. Barnes contends that an unreasonable search and seizure occurred when Dolph forced Barnes to send nude photographs to him and because he had access to her medical, social, and psychological history. Barnes states that St. Francis was grossly negligent and deliberately indifferent to the potential injury. The Fourth Amendment protects individuals from unreasonable searches and

---

[33] In this case, it appears that St. Francis is the employing entity—similar to a municipality/county. Although pursuing a claim on the basis of supervisory liability is one way to establish liability against the municipality, there is another avenue. To establish liability against a municipality and/or county, a plaintiff may demonstrate that an official policy or custom caused the injury. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769-70 (10th Cir. 2013); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider*, 717 F.3d at 770.
   In Plaintiff's response to St. Francis' Motion to Dismiss, she states that St. Francis had a custom of inadequate training and understaffing. She also vaguely discusses policies and customs of St. Francis. These arguments make it appear that she is attempting to impose liability on St. Francis through an official policy, practice, or custom. Yet, these allegations are not in her Complaint as she does not specifically identify any policy, custom, or practice. Thus, the Court finds that she does not allege in her Complaint that St. Francis had a policy or custom that caused her injury.

seizures.[34] "The Fourth Amendment prohibition against unreasonable search and seizure is implicated when there is some meaningful interference with an individual's possessory interests in his property."[35] Here, Barnes' facts do not plausibly suggest that a search or seizure occurred. Thus, Barnes fails to adequately allege a § 1983 claim on the basis of an unreasonable search or seizure.

### d. Substantive Due Process Claim

Finally, St. Francis contends that Barnes fails to allege a substantive due process claim because there are no allegations rising to the level required for a substantive due process claim. St. Francis also contends that even if the allegations were to support a substantive due process claim against Dolph, Barnes does not set forth sufficient allegations to support a claim against St. Francis because there are no allegations that it participated or acquiesced in the conduct of Dolph.

"Substantive due process arises from the Fourteenth Amendment's protections against governmental deprivations 'without due process of law.'"[36] There are "two strands of the substantive due process doctrine."[37] "One strand protects an individual's fundamental liberty interests, while the other protects against the exercise of governmental power that shocks the conscience."[38] The Tenth Circuit has instructed lower courts to consider a substantive due

---

[34] U.S. Const. amend. IV.

[35] *Marcus v. McCollum*, 394 F.3d 813, 818 (10th Cir. 2004) (internal quotations marks and citations omitted).

[36] *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (citing U.S. Const. amend. XIV, § 1).

[37] *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008).

[38] *Id.*

process claim under both strands.[39] If, however, "one strand is wholly inapt, then a court need not waste much time analyzing the claim under that framework."[40]

When considering whether a substantive due process claim has been stated under the "fundamental rights" strand, a plaintiff must "both (1) carefully describe the right and its scope; and (2) show how the right as described fits within the Constitution's notions of ordered liberty."[41] Fundamental liberty interests generally relate to marriage, family, procreation, and bodily integrity.[42] In the parties' briefing, they focus on the second strand of a substantive due process claim without discussing the first strand. Thus, the Court will similarly focus on this aspect.

With regard to the second strand of substantive due process, it "is concerned with preventing government officials from abusing their power, or employing it as an instrument of oppression."[43] The standard when considering this conduct is "whether the challenged government action would shock the conscience of federal judges."[44] Only the most egregious conduct will rise to a constitutional violation.[45]

Barnes' allegations with regard to this claim are extremely sparse. Although she incorporates all of the allegations in her Complaint, she only alleges two facts. First, she alleges

---

[39] *Id.* at 769.

[40] *Id.*

[41] *Id.*

[42] *Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253, 1257 (10th Cir. 1996) (citation omitted).

[43] *Seegmiller*, 528 F.3d at 767 (internal quotation marks and citation omitted).

[44] *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998) (quotation marks and citations omitted).

[45] *Williams*, 519 F.3d at 1220.

that "Dolph intentionally discriminated against Plaintiff because of her sex while acting under color of state law, which violates her right to due process." Next, "St. Francis's deliberate indifference and gross negligence allowed Dolph to violate Plaintiff's right to due process." As noted above, a fundamental substantive due process violation generally relates to marriage, family, procreation, and bodily integrity.[46] Barnes' allegations that Dolph discriminated against because of her sex do not fall into these categories. Thus, she fails to state a claim.

Furthermore, to the extent that she is possibly attempting to assert a substantive due process claim on the basis of bodily integrity, her claim would fail.[47] St. Francis argues that there are no allegations of sexual assault or physical touching of Barnes that would rise to the level required for a substantive due process claim. St. Francis argues that the allegations in this case are similar to the allegations in *Gilliam v. USD No. 244 School District*,[48] a case in which the District of Kansas previously found that the allegations were insufficient to state a substantive due process claim. In that case, the plaintiff's high school teacher inappropriately put his arms around her, touched her by leaning over the desk, and pressed his torso into her back while telling her that she made his heart sing.[49] The teacher sent the plaintiff notes, chocolate candy bars, and heart-shaped candies and made comments that she was beautiful and more mature than the other students.[50] He called her into his classroom after school one day and gave

---

[46] *Abeyta*, 77 F.3d at 1257.

[47] Barnes cites to a "bodily integrity" case in her response brief, yet she fails to adequately or plausibly identify or define this right in her Complaint.

[48] 397 F. Supp. 2d 1282 (D. Kan. 2005).

[49] *Id.* at 1285.

[50] *Id.*

her handwritten poems.[51] The plaintiff alleged that this behavior violated her substantive due process right to bodily integrity. The court disagreed and noted that generally, with regard to a substantive due process claim for bodily integrity, "conduct falling shy of sexual molestation or assault does not give rise to an actionable § 1983 substantive due process claim."[52] In addition, the court noted that this teacher's conduct while inappropriate did not amount to behavior that was an abuse of official power that would shock the conscience.[53]

Barnes asserts that Dolph's conduct is outrageous and conscience shocking. She claims that the alleged facts are similar to the facts in *Haberthur v. City of Raymore*,[54] a case from the Eighth Circuit in which it found that the plaintiff stated a substantive due process claim based on conduct short of a sexual assault. Specifically, a police officer pulled over the plaintiff at her house and threatened to issue her a ticket.[55] On later occasions, while in uniform and carrying his gun, the officer showed up at the plaintiff's workplace and placed his hands under the plaintiff's sweatshirt and touched her breasts and chest.[56] He also ran his hands down her sides and invited her to the back room with him.[57] The officer followed the plaintiff in his police car, and he repeatedly drove by her house in his police vehicle and private vehicle.[58] On two separate

---

[51] *Id.*

[52] *Id.* at 1288; *see also Abeyta*, 77 F.3d at 1255-56 (noting that in the context of school sexual harassment cases the court could find no case "that held conduct falling shy of sexual molestation or assault constitutes constitutionally actionable sexual harassment.").

[53] *Gilliam*, 397 F. Supp. 2d at 1288.

[54] 119 F.3d 720 (8th Cir. 1997).

[55] *Id.* at 721.

[56] *Id.*.

[57] *Id.*

[58] *Id.* at 723.

occasions, he threatened to give the plaintiff a ticket.[59] Thus, the Eighth Circuit found that the allegations of physical contact and sexually suggestive remarks combined with the use of the officer's police authority were sufficient to state a substantive due process claim.[60]

Although the Eighth Circuit case is instructive, it is not binding on this Court. In addition, the facts are more egregious than the facts alleged here. There was more offensive physical contact in *Haberthur*. In this case, Barnes alleges that Dolph inappropriately touched her by grabbing her at the ribs and waists and that he sat close to her on the couch. In addition, she alleges that Dolph stroked her hair and rubbed her back.

Although the allegations in this case appear more serious than the allegations in *Gilliam*, they also do not rise to the level in *Haberthur*. As noted by the Tenth Circuit, "not every condemnable act by a public official represents a constitutional violation."[61] Even if Barnes did raise a substantive due process claim on the basis of bodily integrity, the allegations do not rise to the level to support a constitutional substantive due process violation.

In sum, the Court finds that Barnes adequately alleges an equal protection claim. She does not, however, adequately allege a search and seizure claim or substantive due process claim. Accordingly, the Court dismisses these claims.

---

[59] *Id.*

[60] *Id.* at 724.

[61] *Williams*, 519 F.3d at 1225 (finding that a city's business license inspector's conduct of forcefully stating that he could shut down the plaintiff's business, using profane language, and physically assaulting the plaintiff did not amount to a substantive due process violation).

e. Qualitied Immunity

St. Francis briefly asserts that it is entitled to qualified immunity if the Court should find that it engaged in state action. St. Francis, however, does not develop its argument. Thus, the Court will not address it with regard to this motion.

**B.     State Law Claims**

Barnes alleges a claim for the tort of outrage, or intentional infliction of emotional distress, and an invasion of privacy claim against both Dolph and St. Francis.[62] St. Francis contends that Barnes fails to allege sufficient facts that it is vicariously liable for Dolph's behavior. At this time, St. Francis does not challenge whether Dolph's behavior constitutes intentional infliction of emotion distress or an invasion of privacy.

Barnes asserts that she has adequately alleged that St. Francis is liable under an agency theory of "aided-in-agency." She has not. Indeed, the only allegation that Barnes includes with regard to these two intentional tort claims is that St. Francis, as Dolph's employer, is vicariously liable for Dolph's actions. "Generally, an employer is not liable for the intentional torts of an employee unless they are committed while the employee is acting within the scope of his employment or in furtherance of his employer's business, and not with a purpose personal to the employee."[63] Sexual harassment is rarely considered to be within the scope of a person's employment.[64]

---

[62] Plaintiff also alleges claims of negligence and negligent infliction of emotional distress against St. Francis, but St. Francis does not challenge the adequacy of these claims at this time.

[63] *Farris*, 924 F. Supp. at 1050 (citation omitted).

[64] *Id.* at 1046.

As to Barnes' aided-in agency theory, courts have occasionally relied upon § 219(2)(d) of the Restatement (Second) of Agency to find an employer vicariously liable for its employee's tortious action when that act was outside the scope of his employment.[65] "Section 219(2)(d) provides that an employer may be liable for the torts of an employee if the employee used his apparent authority or agency relationship to commit the tort."[66] In this case, Barnes' Complaint is insufficient to plausibly suggest that St. Francis is vicariously liable for Dolph's conduct. Merely employing an individual who commits intentional torts does not impute liability onto the employer.[67] Thus, the Court dismisses the intentional infliction of emotional distress and invasion of privacy claims against St. Francis.

### IV. Conclusion

In sum, the Court grants in part and denies in part St. Francis' Motion to Dismiss. The search and seizure and substantive due process claims are dismissed. In addition, the intentional infliction of emotional distress and invasion of privacy claims asserted against St. Francis are dismissed.

---

[65] *See Hirschfield v. New Mexico Corr. Dep't*, 916 F.2d 572, 579 (10th Cir. 1990).

[66] *Farris*, 924 F. Supp. at 1050. The Court notes that the Restatement (Third) of Agency was issued in 2006, and it deleted § 219.

[67] *See Hirschfield*, 916 F.2d at 579 (noting the district court's decision was correct in stating that "[t]he only conceivable way [defendant] was aided by the agency relationship in the accomplishment of the tort is that he would not have been there but for his job. This is too broad a reading of 219(2)(d).").

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 11) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**.

Dated this 21st day of June, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE